[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINAL ORDERS OF DISSOLUTION
This is an action instituted by the plaintiff husband Steven Freeman against the defendant wife Anne Freeman. After the trial of this matter, the court stated on the record its preliminary findings and orders. The court has carefully considered these preliminary findings. The court has also carefully considered the statutory criteria for the granting of a dissolution of marriage, the awarding of custody, visitation, child support, alimony and attorney's fees, and the dividing of the parties' assets and liabilities. The court issues the following orders.
1. Dissolution of marriage. The parties' marriage is dissolved because of the irreconcilable and irretrievable breakdown of the marriage.
2. Custody. The parties shall have joint legal custody of their minor children as defined by Section 46b-56a of the General Statutes. Primary physical custody of the children shall be with the mother. The parties shall share joint decision making authority over all major issues pertaining to the children's health, education, general welfare and extra-curricular activities. The party with whom the children are physically present shall make all day to day decisions relating to the children.
Both parties shall encourage the children's relationship with the other parent. Each party is to ensure that no one, including the parent, addresses the children concerning the other parent in a disparaging or disrespectful manner.
As found as part of the court's preliminary ruling, the best interests of the children will be served by the children remaining in the wife's custody, with the husband having liberal and extensive visitation, and with the wife complying with the visitation orders and not interfering with the relationship between the father and the children. The wife's physical custody of the children is expressly conditioned on her compliance with the visitation and custody orders issued herein. The court's order giving physical custody of the children to the mother shall be subject to review and reconsideration upon evidence establishing that the wife has engaged in significant behavior or CT Page 8838 a course of conduct whereby she has failed to comply with the court's custody or visitation orders or whereby she has otherwise acted to undermine or interfere with the relationship between the husband and the children.
3. Visitation. The visitation shall be governed by the Parenting Schedule and Related Orders set out in the attached Appendix.
4. Child Support. The court orders the husband to pay child support to the wife in the amount of $211 a week. This child support order is based on the husbands's income of $1000 gross a week and $680 net a week, and on the wife's earning capacity of $440 gross a week and $284 net a week. (See Child Support Guideline Worksheet filed on April 21, 1999 by the guardian ad litem and identified in the file as "Appendix B"). This child support represents a deviation from the guidelines calculation based on the wife's financial statement because of her self-employment status and the court's finding that the earnings shown on her financial affidavit understate her earning capacity.
The husband will be entitled to claim as exemptions the parties' minor children on his income tax returns commencing with the tax year 1999 (for the tax return due in April 2000) and the wife shall not be entitled to assert these exemptions.
5. Health Insurance for Minor Children. The husband shall maintain insurance for the minor children as available through his employment. All medical, dental, psychiatric and such similar expenses of the minor children not covered or reimbursed by such insurance shall be equally divided and paid by the parties.
6. Alimony. Neither party shall receive alimony. In addition to the applicable statutory criteria governing the award of alimony, the court particularly notes that in making this alimony decision, the court has considered the parties' income, their earning capacities, the cause for the breakdown of the marriage, and the wife's present cohabitation with another person. The court declines to issue an award concerning life insurance as requested by the wife as the court has not received any evidence about the husband's insurability or the cost of any such insurance. The husband shall ensure the wife's access to medical insurance under COBRA as may be requested by the wife, but the wife shall be responsible for any premium. CT Page 8839
7. Property Divisions. The wife shall transfer to the husband within 30 days a Norataki serving dish received from the husband's father as part of a set of dishes and a blender received from the husband's mother. The parties shall retain as their sole and exclusive property all other personal property and accounts listed on their respective financial affidavits and in their possession.
8. Debt divisions. The husband shall be responsible for the PNC Bank and the Nations Bank debts shown on the wife's financial affidavit. The wife shall be responsible for any taxes relating to a federal income tax deferment for the year 1996. The wife shall be responsible for all other debts listed on her financial affidavit and the husband shall be responsible for all debts listed on his financial affidavit. The parties shall hold each other harmless and indemnify each other respectively as to those debts for which they are responsible. This hold harmless and indemnification obligation shall not be dischargeable in bankruptcy. The debts owed to the children's attorney and guardian ad litem shall be paid in the amount and in the manner described below.
9. Counsel fees. The parties shall be responsible for their own attorney fees. The motion for attorney fees filed by the attorney for the children is granted and allowed in the total amount of $10,500. The motion for fees filed by the guardian ad litem is granted and allowed in the total amount of $6,000. The court finds that so much of the time expended by the children's attorney and guardian ad litem was increased by the unreasonable, and in some instances contemptuous conduct of the wife that she should be responsible for a greater portion of their fees. The husband is ordered to pay $4,200 of the fees of the attorney for the children. The husband is ordered to pay $2,400 of the fees of the guardian ad litem. The wife is ordered to pay $6,300 of the fees of the attorney for the children. The wife is ordered to pay $3,600 of the fees of the guardian ad litem. The court notes that the parties are entitled to credits against these total amounts as reflected and represented by the parties on the record. No later than August 31, 1999, the parties shall pay 50% of the amounts that they owe and have been ordered to pay to the children's attorney and guardian ad litem.
Thereafter, the husband and the wife shall each pay $75 to the attorney for the children and $75 to the guardian ad litem for three months. These payments shall be paid no later than CT Page 8840 September 15, 1999, October 15, 1999, and November 15, 1999. No later than December 15, 1999, the parties shall pay in full any outstanding balances that they owe to the attorney for the children and to the guardian ad litem.
The services provided by the children's attorney and guardian ad litem were for the benefit of the children, and therefore, the parties' obligation to pay the fees as ordered herein shall be non-dischargeable in bankruptcy. Furthermore, court's order for the parties to pay the fees of the children's attorney and guardian ad litem is issued as part of this final judgment, and therefore, in addition to any other available remedy, this order may be enforced and collected against the parties in any manner authorized by law.
10. Restoration of maiden name. The defendant' maiden name of Anne Cherry is restored.
Dated July 7, 1999.
Stevens, J.
 APPENDIX TO FINAL ORDERS OF DISSOLUTION PARENTING SCHEDULE AND RELATED ORDERS
The court orders visitation or parenting between the parties and the children according to the following schedule.
 WEEKLY PARENTING SCHEDULE
Sun. Mon. Tues. Wed. Thurs. Fri. Sat.
week 1: M M M M F F F
week 2: F/M M M M F F F/M am/pm am/pm
The mother has the right to designate three separate Fridays during the academic calendar year (September through the end of school) when she shall have the children on a Friday overnight thru Sunday overnight so that she may have a long weekend with the children. She must provide the father with two weeks advance notice of such choice. CT Page 8841
The children shall be free to initiate phone calls to the other parent as they may desire without restrictions. Each parent may have one telephone call with the children at a set time to be agreed upon and designated for those periods when the children are not with them either during the regular visitation schedule or during the holiday or vacation schedule.
This weekly parenting schedule shall be subject to the school vacations, summer vacations and holiday vacations schedules ordered below.
SCHOOL VACATIONS
The school vacations shall be split evenly. The father shall have February and the mother shall have April unless otherwise agreed to in writing by the parties; if there is only one school vacation (other than the Christmas break which is set forth below), then the parties shall equally divide the week so that whoever has the children on the weekend that begins the vacation period shall have them until Wednesday at 3:00 p.m. and other parent shall have the children through the end of the following weekend before school resumes.
SUMMER VACATIONS
Each parent shall have three weeks exclusive summer vacation, which shall run from Friday evening at 7:00 p.m. through the Saturday at 6:00 p.m. on which the visitation shall end (to accommodate vacation rentals schedules); said weeks may be either consecutive or separate weeks.
The father is to notify the mother of his choice of weeks no later than March 1 of each year. The mother is to notify the father of her choice no later than April 1 of each year. The parties shall act in good faith to resolve any summer scheduling conflicts. If the parties cannot reach a mutually agreeable schedule regarding the summer vacation, the father shall take his summer vacation with the children consecutively during the 2nd, 3rd and 4th weeks of July and the mother may schedule her summer vacation during any other remaining weeks during the summer so as not to interfere with the "holiday" visitation as scheduled below.
HOLIDAYS
CT Page 8842
The major holidays shall be alternated between the parties, with the exception of Christmas Eve from 5:00 p.m. to December 26 at 10:00 a.m and Easter from 9:00 a.m. to 6:00 p.m. which are awarded solely to the mother, and the last night of Hanukkah and the first night of Passover from 5:00 p.m. to 9:00 (or 11:00 a.m. the next day if there is no school following the first night of Passover) which are awarded exclusively to the father. The major holidays, including the weekend of the holiday unless otherwise specified, are defined as: Memorial Day, July 4th, Labor Day, and Thanksgiving Day. For 1999, the mother shall have the children for July 4th, the father shall have the children for Labor Day, and the father shall have the children for Thanksgiving.
The Christmas school vacation shall be divided as follows: the mother shall always have the children from the last day of school beginning of the school vacation period through December 26 at 10:00 a.m. The father shall always have the children from December 26 at 10:00 a.m. through New Year's Eve Day at 12:00 noon. The parties shall alternate visitation on an annual basis from New Year's Eve Day at 12:00 noon until the children resume school, with the father having this time period for the year 2000; when the father has visitation during this time period after New Year's Eve, his parenting shall end and the mother's parenting shall begin on the day before the start of school at 6:00 p.m. The court notes that on or about June 16, 1998, the court adopted the pendente lite agreement of the parties allowing the mother to have the children throughout the 1999 Christmas vacation. This pendente order is being modified by the order issued herein. The court finds on the basis of the trial evidence that a substantial change of circumstances has occurred since the entry of the June 16, 1998 order arising from the numerous visitations missed by the father. Many of these visitations were missed because of the actions of the mother.
Monday school holidays shall belong to whichever parent has the children on the Sunday prior to the holiday so that the parent's visitation shall continue over the weekend through the Monday holiday.
Mother's Day and Father's Day shall be enjoyed exclusively by the respective parent. If Father's Day falls on a Sunday when the Mother has the children, then Father's Day shall be spent with the father from 9:00 a.m. to 7:00 p.m. If Mother's day falls on a Sunday when the Father has the children, then Mother's Day shall be spent with the mother beginning at 9:00 a.m. for the rest of CT Page 8843 the day.
DROPOFF AND PICKUP
The parties are directed to discuss and agree to drop off and pickup times and locations, however, in the absence of a mutual agreement, the following shall apply:
 1) The father's Thursday visitation (Week 1 and Week 2) shall begin at 6:30 p.m. The mother's Sunday visitation (Week 2) shall begin at 6:00 p.m.; and the mother's Saturday visitation shall being at 10:00 a.m. The father shall be responsible for picking up the children at the mother's residence at the start of his time and the end of the mother's time with the children, and the mother shall be responsible for picking up the children at the father's residence at the start of her time and the end of the father's time with the children.
COMMUNICATIONS FACILITATOR
The mother and father shall meet twice monthly with an individual acting as a Communications Facilitator; the parties are to divide equally the cost of such Communications Facilitator that is not covered by insurance. The Communications Facilitator shall be Dr. Barbara Nordhaus. The first sessions with the Communications Facilitator shall begin within 30 days of this order or as soon as reasonably possible thereafter. Said sessions shall continue for not less than six months, at which time the court will review whether these sessions shall continue.
The purpose of the Communications Facilitator is to assist the parties' discussions about their children and the visitation schedule in a non-confrontational and nonjudgmental setting. The Communications Facilitator shall be an individual agreed to by the parties within thirty days following the entry of this order. A party's wilful failure to meet and cooperate with the Communications Facilitator may subject the noncomplying party to further orders of the court, which may include contempt sanctions. The parties shall discuss and attempt to resolve any disagreements concerning custody or visitation with the Communications Facilitator.
RELOCATION
CT Page 8844
Neither party is to relocate either out of state of Connecticut or more than twenty miles from their present residence, without ninety days written notice to the other party.
MONITORING AND CONSENSUAL MODIFICATION
The court's visitation and custody orders shall be monitored on Wednesday, August 9, 1999 and on Wednesday, January 12, 2000. These dates may be changed by mutual agreement of the parties through case flow or pursuant to motion. The parties and counsel are ordered to appear on the monitoring dates.
The parties may mutually agree to modify the visitation and parenting schedules ordered herein in order to accommodate scheduling problems or conflicts, the children's activities, or emergencies.